UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case Number 08-20598-BC
v.                                           Honorable Thomas L. Ludington

RUBEN STEVEN RANKE,

        Defendant.

_____ /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE SEIZED FROM 1749 WOOD STREET, DISMISSING WITHOUT
PREJUDICE DEFENDANT'S REMAINING MOTIONS TO SUPPRESS, DENYING
MOTION TO DISMISS INDICTMENT, GRANTING MOTION TO STRIKE ALIASES,
AND DIRECTING BRIEFING ON WHETHER MAILING "COMPUTER GENERATED
IMAGES" CAN CONSTITUTIONALLY BE PROHIBITED**

On November 12, 2008, a grand jury assembled in the Eastern District of Michigan returned

a two-count indictment against Defendant Ruben Steven Ranke, alleging he knowingly mailed and

knowingly possessed child pornography in violation of 18 U.S.C. § 2252A. At the time, Defendant

was in the custody of the State of Michigan, awaiting trial on a firearms charge. Defendant has been

jailed since April 30, 2008, when he was arrested after law enforcement officers executed a search

warrant at his father's home, located at 1749 Wood Street, Saginaw, Michigan. Execution of that

warrant led to both the state firearms charge and the federal child pornography charges.

Defendant entered a guilty plea to the state charge, possessing a firearm while committing

a felony, Mich. Comp. Laws § 750.227b, and he was sentenced to two years in prison on December

2, 2009. He was released from state custody on April 28, 2010, and immediately taken into federal

custody. Defendant made his initial appearance before Magistrate Judge Charles E. Binder on the

same day, and he was arraigned on the child pornography charges.

In August 2010, Defendant filed several motions contending that much of the evidence seized from 1749 Wood Street, a mailbox at a UPS Store in Saginaw Township ("UPS mailbox 273"), and a pair of storage units ("storage units 313 and 543"), also in Saginaw Township, should be suppressed because the search warrants were not supported by probable cause. [Dkt. # 12, 14, 15, 16]. He also contends that the indictment should be dismissed because too much time has passed since he was arrested and indicted by the grand jury, and proceeding to trial at this point would violate his Sixth Amendment right to a speedy trial. [Dkt. # 17]. Finally, Defendant contends that the aliases listed in the indictment—"Steven Ruben Ranke," "Steven Bruce Westphal," and "B.K. Williams"—should be stricken as "surplusage." [Dkt. # 19]. The government opposes only the motion to suppress evidence seized from 1749 Wood Street and the motion to dismiss the indictment. [Dkt. # 22, 23]. The government further contends that the motions to suppress evidence seized from the storage units and mailbox should be dismissed without prejudice because the government does not intend to introduce any evidence seized pursuant to those warrants. Defendant's motion to suppress evidence seized from 1749 Wood Street will be **DENIED** [Dkt. #15], Defendant's motion to dismiss the indictment will be **DENIED** [Dkt. # 17], Defendant's motions to suppress evidence seized from the mailbox and storage units will be **DISMISSED WITHOUT PREJUDICE** [Dkt. # 12, 14, 16], and the motion to strike aliases will be **GRANTED** [Dkt. # 19]. Further briefing will be ordered to clarify whether the images underlying Count One are computer generated, and whether mailing computer generated images can constitutionally be prohibited.

**I**

In March of 2008, federal authorities at a prison in New York seized the incoming mail of

a prisoner named Adam Brown, as well as other documents from his cell. *See* Aff. of Brian Pitt; [Dkt. # 15-3]. Brown is a convicted child pornographer. *Id.* The seized mail included an Easter card with four "computer generated photographs of a minor male." *Id.* The images were not attached to the affidavit, but they were described by Detective Pitt. *Id.* Pitt affirmed that "[t]he images displayed that male naked, exposing his genital area and apparently masturbating." *Id.* The affidavit did not indicate the estimated age of the "minor male" or explain how Detective Pitt determined that the male was a "minor." The affidavit also did not indicate whether there was a return address for the Easter card or any other information that would identify its sender.

The other documents seized from Brown's cell included an address book, which listed a "Steve Ranke with an address of 5065 State, #273, Saginaw, MI," and two hand written letters from "Steve" to Brown. *Id.* The address in the book belonged to a rented mailbox at a UPS Store in Saginaw Township, Michigan. The letters were attached as exhibits to the affidavits and also described by Detective Pitt. *Id.* According to Detective Pitt, the letters were reviewed by an FBI agent named Brett Banner, and "based on his training and experience in child pornography investigations, [Banner] identified the content of those letters as reflecting sexual activity between an adult male and juvenile males in musical terms." *Id.* According to the affidavit, after federal prison authorities questioned Brown about the letters and the computer generated images, Brown told the officials that if they "did their due diligence on RANKE in Saginaw they were on the right track." *Id.*

Detective Pitt then searched for records relating to Defendant Ranke through LIEN and Accurint databases. *Id.* Both the Michigan Secretary of State and Accurint listed Defendant's mailing address as "5065 State St.," which is the location of UPS mailbox 273. Defendant was also

issued a traffic ticket in Saginaw County in 2006 and provided the UPS mailbox 273 address to the officer. *Id.* The Secretary of State, however, listed a second address for "Ruben Steven Ranke" as 4049 Ann Street, Saginaw. Acting on this information, Detective McInerney conducted a "trash pull" at the Ann Street address. *Id.* The detective removed three white garbage bags and one yellow garbage bag from the address. *Id.* The bags contained 10.9 grams of marijuana, a pair of discarded cell phones, and "several paper items with the names of Steve Fulton, Jordan Fulton, Justin Fulton, and Shelly Fulton." *Id.*

On April 29, 2008, a district judge in Michigan's 70th Judicial District signed a warrant authorizing the search of the residence located at 4049 Ann Street, UPS mailbox 273, and a second UPS mailbox, number 27. *Id.* The search of UPS mailbox 273, which was executed on the same day, revealed six letters and seven sheets of records [Dkt. # 12-4]. One of the letters was mailed to Defendant Ranke by a second federal inmate named William Martin. *See* Aff. of Brian Pitt; [Dkt. # 15-3]. In the letter, Martin " 'jok[ed]' with RANKE about . . . RANKE'S not being involved with any criminal activity." *Id.* Martin signed the letter with his own name and a triangular symbol that Detective Pitt identified through investigation as the symbol for "NAMBLA," or the "North American Man-Boy Love Association." *Id.* The warrant for 4049 Ann Street was executed on April 30, 2008, but apparently no evidence was seized. Investigators did, however, learn from the residents of 4049 Ann Street that Defendant lived with his father at a different address in Saginaw, 1749 Wood Street.[1]

---

[1] Shelly Fulton, one of the people whose papers were found during the Ann Street trash pull, is apparently Defendant's sister. Defendant, however, has never lived at the Ann Street address. *See* Aff. of Brian Pitt; [Dkt. # 15-3]. Defendant has also not challenged the search of 4049 Ann Street, and his attorney acknowledged at oral argument that he cannot challenge the search because he has no protected privacy interest in the residence.

UPS mailbox 273 also contained records indicating that Defendant Ranke "currently rented/leased" storage units 313 and 543. *Id.* With this additional knowledge, Detective Pitt returned to the 70th District Court and obtained a second search warrant for storage units 313 and 543, also on April 29, 2008. [Dkt. # 14-2]. The warrant was executed the next day. *See* Aff. of Brian Pitt; [Dkt. # 15-3]. In storage unit 313, investigators discovered one wooden box containing ropes, belts, and "adult books," and a framed black and white photograph. [Dkt. # 14-3]. In storage unit 543, investigators discovered map books; several boxes of paperwork; pictures, including some depicting people who were tied up; pornographic videos; other VHS tapes; a blue "police-type" light; handcuffs; "sex toys"; and compact discs. *Id.* The log does not indicate whether any of the VHS tapes, compact discs, pictures, or pornographic videos contained images of child pornography.

Also on April 30, 2008, a 70th District Court judge signed a warrant for the search of 1749 Wood Street. [Dkt. # 15-2]. The warrant authorized investigators to search "[t]he entire premises and curtilage, including any and all outbuildings and or structures and common areas associated with [the] two story, single-family residence located" at that address, including any vehicles located on the property. *Id.* The warrant authorized investigators to seize, inter alia,

> [a]ny and all computers, computer components, computer parts capable of storing electronic or digital images or data, . . . equipment[] that can be used in the storage, production, reproduction, transmission, or dissemination of child pornography or images of child sexually abusive activity, . . . text files, picture files in any format, system files, program files or other like files in any format, relating to the storage, discussion, dissemination or communication of . . . child pornography . . . records . . . reflecting access to or payment for online computer access or service . . . .

*Id.* The warrant also authorized investigators to take pictures of the premises and to seize any documents, letters, or other printed materials "reflecting communications between 'STEVEN RANKE' and any person related to child pornography . . . ." *Id.*

The affidavit in support of the warrant indicated that Detective Pitt had worked for the Saginaw Township Police Department for twenty-five years. *See* Aff. of Brian Pitt; [Dkt. # 15-3]. It indicated that Pitt's assignments "include, but are not limited to, investigating complaints involving computers, checks, credit cards, bank fraud, embezzlement, identity theft, and other types of fraud." *Id.* The affidavit described the address book, images, and letters seized from Brown's cell; it indicated that one letter discussed Defendant's employment working with young boys; the other letter reflected, in an expert's view, coded sexual depictions involving a man and a boy; it indicated that Defendant was connected to the Ann Street address by the secretary of state; it indicated that marijuana was found in the Ann Street trash pull; it indicated that a letter was found in UPS mailbox 273, which included a NAMBLA symbol and a "jok[e]" about Defendant's lack of involvement in criminal activity; it indicated that a warrant was executed at the Ann Street address, but that Defendant's sister told investigators he had never lived there; it related Brown's statement that investigators should "do their due diligence" on Defendant; and it provided that 1749 Wood Street was a residence owned by Defendant's father, where Defendant's sister said Defendant lived. *Id.* The affidavit continued:

> I know based on my training and experience, that persons involved in child pornography routinely keep and or maintain images, records, documents and or data related to that pornography at their residence or at the place they are staying and or at the residence of friends or family members or other persons associated with them in an attempt to protect those things from seizure by investigating law enforcement officers.

*Id.* The affidavit also attached excerpts from the two letters discovered in Brown's cell.

Investigators executed the warrant at 1749 Wood Street on April 30, 2008. Most of the items seized were discovered in a bedroom on the second floor. Investigators seized bus cards in the name of Steven Westphal; two social security cards in the same name; cassette tapes; miniature tapes;

compact disks; floppy disks; video tapes; digital video discs; a web camera; a recording device; a Sony laptop computer; sex toys; several boxes of paperwork and letters; photographs; tools; at least eleven firearms; and a marijuana magazine. [Dkt. # 15-4]. Investigators also seized other items that are listed on the search log but illegible, including marijuana plants that were growing in a closet.

On May 8, 2008, UPS mailbox 273 was searched again. Six letters were discovered, but the record does not include further information about their contents.

## II

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. In most circumstances, before a law enforcement officer may enter or search a person's home, mailbox, or rented storage unit, the Fourth Amendment requires that the officer obtain a search warrant supported "by oath or affirmation," establishing "probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The probable cause requirement is a "practical, nontechnical conception" based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983) (citation and quotations omitted). It is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* A magistrate judge asked to determine whether probable cause exists to issue a search warrant should evaluate the "totality of the circumstances" to determine whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

Reviewing courts should not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' " *United*

*States v. Leon*, 468 U.S. 897, 915 (1984) (quoting *Gates*, 462 U.S. at 239). Nor should courts endorse a warrant based on an affidavit that is "knowing[ly] or reckless[ly]" false. *Id.* at 914 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). But courts must be mindful that the decision of a "neutral and detached" magistrate judge should be afforded "great deference." *Id.* at 914. The Supreme Court has "expressed a strong preference for warrants and declared that 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.' " *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 106 (1965)).

### A

The government contends that it does not intend to admit any evidence seized from UPS mailbox 273 or storage units 313 and 543. Accordingly, it contends that the motions to suppress related to those warrants are moot. Pursuant to the government's representations to the Court, the motions to suppress related to the searches of mailbox 273 and storage units 313 and 543 will be dismissed without prejudice with the understanding that the government may not use any evidence related to those searches at trial. The government's decision not to defend those warrants, however, also limits the evidence the government was permitted to use to establish probable cause for the search of 1749 Wood Street. *Wong Sun v. United States*, 371 U.S. 471, 485–86 (1963). Information obtained pursuant to the earlier warrants cannot be used to establish probable cause for the later warrant. Still, the government contends there was sufficient evidence for the Michigan state court judge to determine that there was a "fair probability that contraband or evidence of a crime will be found" at 1749 Wood Street. *Gates*, 462 U.S. at 238.

### B

The search of 1749 Wood Street was conducted on April 30, 2008. Defendant contends that

the evidence allegedly connecting him to child pornography—four computer generated photographs of a nude "minor male," two sexually explicit letters from "Steve" to a federal inmate in New York, and an address book listing Defendant's address discovered in the possession of a convicted child pornographer, as well as a statement from that prisoner that investigators "were on the right track" with Defendant—are insufficient to establish probable cause. Defendant also emphasizes that there is no "nexus" between the evidence and the residence located at 1749 Wood Street. Finally, Defendant contends that the search was an "illegal general search" and that the Court should hold an evidentiary hearing to determine whether a general search occurred.

**1**

As an initial matter, both in his brief and at the hearing Defendant focused on the nature of the evidence described in the search warrant affidavit, and contended that the evidence was insufficient to establish probable cause to search for child pornography because it did not include any actual child pornography. Defendant emphasized that all of the pictures and letters seized from inmate Adam Brown's cell are legal to possess under federal law. According to the affidavit, the images were "computer generated," and computer generated images, even if they depict children under age eighteen engaged in sexually explicit activity, are "not unlawful to possess." *United States v. Lapsins*, 570 F.3d 758, 764 (6th Cir. 2009); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244–45 (2002) (establishing that computer generated images of what otherwise would be child pornography are protected by the First Amendment and therefore legal to possess).

The government responded that computer-generated images are specifically included in the definition of "child pornography." 18 U.S.C. § 2256(8). The government further argued that the Supreme Court considered an earlier version of the statute in *Ashcroft v. Free Speech Coalition*, and

that the Court has never addressed the constitutionality of the current version of § 2256(8).  It is difficult to square the government's argument with *Ashcroft v. Free Speech Coalition*—even if the statute has been amended, Congress cannot reverse a constitutional rule by statute.  Still, the government will be permitted to further brief the issue.  For the purposes of this motion, it will be assumed that the computer generated images, like the other evidence listed in the affidavit, were legal to possess and mail.

With that understanding, Defendant has not identified a case where any Court has concluded that an affidavit supporting a search warrant for child pornography is per se insufficient when it does not contain any evidence of actual child pornography.  Indeed, conclusive evidence that the Defendant has possessed actual child pornography is not necessary to support probable cause for a warrant.  As the government emphasizes, even assuming that all the evidence described in the affidavit was legal to possess, it may still establish probable cause for a warrant to search 1749 Wood Street.

The government contends persuasively that "child erotica," including nude photographs of minors or computer-generated images of children engaged in sexual conduct, is some evidence that may properly be considered in establishing probable cause to search for child pornography.  *See Lapsins*, 570 F. 3d at 765 ("[A]t the probable cause stage . . . 'an actual showing' that the images depicted real children was not required . . . .") (citation omitted); *see also United States v. Hansel*, 524 F.3d 841 (8th Cir. 2008); *United States v. Rochelle*, 205 F. App'x 296 (5th Cir. 2006) (per curiam).  In *Lapsins*, the defendant was suspected of possessing and distributing child pornography over the internet.  Police intercepted a single image that the defendant had sent to a different suspected child pornographer, and used the image to obtain a search warrant for the defendant's

home. The defendant argued that the evidence discovered when police searched his home should be suppressed because there was no affirmative representation in the affidavit that the intercepted image depicted a real child. *Lapsins*, 570 F.3d at 764–65. The Sixth Circuit, while suggesting that the image was of a real child and that the other representations in the affidavit strongly suggested it was a real child, also noted that it need not actually be a real child to support a finding of probable cause. *Id.* at 765. "As required at the probable-cause stage, the warrant in this case was supported by 'a probability or substantial chance of' possession of images of actual children; 'an actual showing' that the images depicted real children was not required . . . ." *Id.* (quoting *Gates*, 462 U.S. at 243 n.13).

Similarly, in *Rochelle*, the Fifth Circuit concluded that the officer executing a search warrant was entitled to rely in good faith on the affidavit establishing probable cause, which was based, in part, on the fact that the defendant had received e-mail messages with pictures of a nude, pre-pubescent female and a pre-pubescent female wearing only white underwear. *Rochelle*, 205 F. App'x at 297. The affidavit referred to the images as "child erotica" in an apparent acknowledgment that they were not child pornography. In *Hansel*, the Eighth Circuit concluded that photographs of nude girls and other girls in swimsuits could be considered, along with other evidence, including allegations of sexual assault and camera and computer equipment, in finding probable cause to conduct the search. *Hansel*, 524 F.3d at 846.

Accordingly, computer generated images certainly can be considered, but the fact that they are not themselves actually prohibited by law is an additional factor that limits their relevance to the probable cause determination. Warrants are evaluated from a practical, common sense perspective, not the perspective a skilled legal technician. *Gates*, 462 U.S. at 231–32. All that is required is that

the government demonstrate a "a probability or substantial chance" that evidence of a crime or criminal contraband will be found in a particular place. *Lapsins*, 570 F.3d at 764–65. The government may be able to meet that burden in a child pornography investigation even if the affidavit does not describe any illegal child pornography.

## 2

Defendant also challenges the sufficiency of the affidavit on more general grounds, as well as the nexus connecting the items found in Brown's cell to the residence located at 1749 Wood Street. Defendant emphasizes that there is very little detail about the "computer generated" images found in Brown's cell,[2] and even less about the identity of the sender, contained in the affidavit. Similarly, the letters, which were also in Brown's possession, are signed by "Steve," but there is no other identifying information on the letters and the dates do not include a year. The address book is certainly the best evidence of Brown's connection to Defendant, but it listed a UPS mailbox address and not the address of the residence that was searched. Moreover, the mere presence of Defendant's name and address in a convicted felon's address book is not evidence of a crime.

Defendant also contends that Brown's suggestion to investigators—if they "did their due diligence on Ranke in Saginaw they were on the right track"—is of little evidentiary value. Defendant argues that it was "vague, not obviously reliable, and entirely unsupported by any independent investigation on the part of the police." *United States v. Hammond*, 351 F.3d 765, 772 (6th Cir. 2003). The government responds that the statement could have been more specific and better corroborated, but that investigators have no obligation to verify every factual assertion of an

---

[2] Defendant also notes that the affiant, Detective Pitt, apparently did not see the images, but it is not clear why that fact is significant. Detective Pitt knew what the images depicted and described them accurately in the warrant affidavit.

informant.  *United States v. Smith*, 182 F.3d 473, 481 (6th Cir. 1999) (citing *Gates*, 462 U.S. at 231 n.6).  The government also emphasizes that the informant in this case was not anonymous; he was a convicted child pornographer with sexually explicit material in his cell.

Defendant also emphasizes that there is no "nexus between the place to be searched and the evidence sought."  *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (citation and quotation marks omitted).  Here, all the evidence of child pornography was discovered in a prison cell in New York.  Defendant was connected to that evidence by an address book in the cell and the prisoner's suggestion to investigators that investigators should do their "due diligence" concerning Defendant.  Detective Pitt relied on his own expertise to connect Defendant's residence with child pornography, noting in his affidavit that "persons involved in child pornography routinely keep and or maintain images, records, documents and or data related to that pornography at their residence . . . ."  Detective Pitt affirmed that his knowledge concerning what child pornographers "routinely" keep in their residences was based on his "training and experience."  He did not allege, however, that he had any specific training or experience in investigating child pornography.

Moreover, the only evidence connecting Defendant to 1749 Wood Street was obtained from Defendant's sister while investigators were executing a separate warrant at a different residence.  Still, the information obtained from Defendant's sister about Defendant's residence is relevant to the investigation.  Indeed, Defendant admitted that investigators were entitled to consider his sister's statement because he does not have standing to challenge the search of her home.  The government asserts that its knowledge of Defendant's living situation coupled with the investigator's knowledge of the "routine[s]" of child pornographers provide a "substantial basis" to believe that contraband or other evidence of a crime would be discovered at 1749 Wood Street.

Ultimately, Defendant has raised several substantial questions about the sufficiency of the affidavit. At the time it was signed in April 2008, the investigators had not uncovered *any* child pornography. The images found in Brown's possession are apparently legal to possess under federal law. Similarly, the letters, although obviously filled with graphic representations concerning past sexual activity involving children or sexual fantasies involving children, are not prohibited by any law. Additionally, the author of the letters suggests that he has sexually abused children in the past, but makes only passing reference to child pornography. The search warrant focused on seizing evidence of child pornography; not evidence of an earlier sexual assault involving a child. The content of those letters and computer generated images may be highly objectionable, but the images and letters are still legal to possess. And Defendant's association with convicted child pornographers may be suspicious, but it is also legal.

Moreover, the connection between Defendant and the images and letters found in New York is not particularly compelling. The letters were signed simply "Steve," and the images contained no information identifying their sender. The only real connection between Brown and Defendant was the address book. However, the appearance of a person's name and address in the records of a convicted felon, without more, is certainly no crime. The warrant did not provide that Defendant was the only "Steve" listed in the address book or identify the total number of entries. Similarly, Brown's statement to investigators was vague and the affiant made no attempt to vouch for Brown's credibility. While the other information found in Brown's cell, including the images and letters, provides some corroboration, the "tip" is not sufficient, without more, to establish probable cause to search 1749 Wood Street.

As the government emphasizes, however, each piece of evidence may not be considered in

vacuum. It is the totality of the circumstances that guide the Court's inquiry. *Gates*, 462 U.S. at 238. The computer generated images and letters to Brown are some evidence that a crime has occurred. The letters were signed by "Steve" and referred to the "pics" that were sent to Brown. The letters implied that their author had repeatedly sexually abused young boys in the past, and that the author intended to target additional boys in the future. The author also indicated that he had frequent contact with potential victims, noting that he worked in a classroom with developmentally delayed nine-year-old boys. The images, although computer generated, feature a nude "minor male . . . apparently masturbating." Moreover, the investigators connected the materials in the New York prison cell with Defendant based on the statements of the cell's occupant and of Defendant's sister. Although the investigator does not indicate the source of his expertise in child pornography, one need not study the subject for an extended period to learn that many of the people convicted of possessing child pornography maintain collections at their residences.

The investigating officer could have included more detail, concerning the discovery of the documents in the New York prison cell and their connection to Defendant. The investigating officer could have corroborated Defendant's occupation and history, to determine whether the verifiable representations in the letters accurately described Defendant. The investigating officer could have asked to examine the images discovered in New York and provided more details about the age and appearance of the "minor male." But if there was an error committed in authorizing the search, it was committed by the judge who signed the warrant and not by the investigating officer. The facts described in the affidavit may well have been "too vague to provide a substantial basis for the determination of probable cause. But these facts . . . were not so vague as to be conclusory or meaningless." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc). The actions

of the investigators in relying on the warrant to search 1749 Wood Street were "objectively reasonable." *Leon*, 468 U.S. at 922. As such, "the marginal or nonexistent benefits produced by suppressing the evidence obtained" during the search "cannot justify the substantial costs of exclusion." *Id.*

It is worth emphasizing again that even if the images found in Brown's cell are computer generated and therefore legal to possess, such a conclusion can certainly be disputed by informed and well-meaning people. In this case, the investigating officer, the judge who issued the warrant, and the prosecutor apparently assumed that the images found in Brown's cell were illegal child pornography. Those images may be sufficient, when considered with the other evidence, to authorize a search of 1749 Wood Street even if the images, on reexamination, turn out to be legal to possess because of a technical distinction between computer generated images and images depicting real children. Moreover, to the extent an error may have been committed in issuing the warrant, it does not justify excluding the evidence. *Id.*

In summary, it may be that the general preference for warrants and the deference due to the state court judge who signed it means that the warrant should be upheld. *See United States v. Hatfield*, 599 F.2d 759, 761 (6th Cir. 1979) (concluding that in cases where "alternative readings of the affidavit are equally reasonable," it is not the "function [of] reviewing courts to substitute [their] interpretation of the facts in the affidavit for that of the magistrate."). In the alternative, it may be that the state court judge erred in determining there was a "fair probability that contraband or evidence of a crime" would be found at 1749 Wood Street. *Gates*, 462 U.S. at 238. Either way, the state court judge was not intentionally misled by the affiant; the affidavit did not "so lack[] in indicia of probable cause to render official belief in its existence entirely unreasonable"; and the

warrant was not facially deficient to the extent that it was not entitled to a presumption of validity. *Leon*, 468 U.S. at 924. Accordingly, Defendant's motion to suppress the evidence discovered during the April 30, 2008 search of 1749 Wood Street must be denied.

## 3

Defendant also contends that the search was an unconstitutional general search because "law enforcement officials seized virtually everything that struck their fancy" and requests a hearing to determine the facts surrounding the execution of the warrant. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (noting that the Fourth Amendment prohibits "general, exploratory rummaging in a person's belongings"). Here, investigators clearly seized items that were not identified in the warrant, at least some of which were not illegal to possess, including twelve firearms, a marijuana magazine, and tools. Moreover, much of the information listed in the seizure log is illegible.

However, Defendant's motion does not specifically identify what the officers did wrong that turned this search into an illegal search. Rather, he attempts to incorporate arguments from earlier motions that are not directly applicable. At this juncture, Defendant has not established that the search was an illegal general search, and there is no reason to hold an evidentiary hearing to inquire further into the matter.

## III

Defendant contends that the indictment should be dismissed because too much time passed between his arrest and the trial, in violation of his Sixth Amendment right to a speedy trial.[3] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to

---

[3] Defendant has not raised an objection based on the Speedy Trial Act. 18 U.S.C. § 3161–3174. His attorney confirmed at the hearing that the motion to dismiss is based only on the Sixth Amendment.

a speedy and public trial . . . ." U.S. Const. amend. VI. The Supreme Court has identified four factors for trial courts to consider in determining whether a defendant's speedy trial right has been violated: (1) the length of the dely, (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The first factor functions as a "triggering mechanism" because "there is no necessity for inquiry into the other factors" until there is "some delay." *Id.* Here, nearly thirty months have passed since Defendant was arrested on April 30, 2008, and nearly two years have passed since his indictment on November 12, 2008. The government concedes that the delay is sufficient to trigger further inquiry.[4] *See United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003) (concluding twenty-nine month delay is sufficient to trigger further inquiry).

The second factor directs the court to inquire into the reasons for the delay. Here, Defendant was arrested in April 2008 and charged with possessing a firearm while committing a felony in state court. Mich. Comp. Laws § 750.227b. He entered a guilty plea to the charge and was sentenced to two years in prison on December 2, 2009. He remained in state custody from the date of his arrest, on April 30, 2008, through the date he completed his sentence, on April 28, 2010. In *Schreane*, the Sixth Circuit concluded that where a defendant is arrested and indicted on separate state and federal charges, lengthy delays must be attributed to separate parties. *Id.* at 554–55. Here, because Defendant was not sentenced on the state charges until December 2, 2009, the period between his arrest and the date the state sentence was imposed—nineteen months—is attributable to state rather

---

[4] The government contends the relevant start date is the date of the indictment and Defendant contends the relevant start date is the date of his arrest. Ultimately, the dispute is not relevant to the outcome of the issue and need not be addressed. Whether or not the six-month period between his arrest and the federal indictment is counted, it is attributable to state authorities as Defendant remained in state custody throughout that period.

-18-

than federal authorities. *Id.* Although the charges were not particularly complicated, Defendant has not advanced sufficient factual evidence concerning the state-related delay to show that it was unreasonable.

Defendant was released from state prison five months later, on April 28, 2010, and was arraigned on the federal charges the same day. After Defendant's arraignment, a scheduling order was issued within a month and subsequent delays have been caused by Defendant's own requests for adjournments [Dkt. # 11, 18] and time required to address the motions now before the Court. Although the five-month delay between the state-court sentencing and the arraignment on federal charges was attributable to federal authorities—a writ could have been issued for Defendant's arraignment in federal court—it was not unreasonable in this circumstance. *See Schreane*, 331 F.3d at 559 (one-year delay between state sentencing and federal arraignment upheld); *United States v. Watford*, 468 F.3d 891, 900–05 (6th Cir. 2006) (eighteen-month dely upheld). Ultimately, given the fact that charges were pending in state court, and by the time they were resolved Defendant's state sentence was nearly completed, the government has offered a compelling justification for most of the delay. With the possible exception of the five-month delay between the imposition of the state sentence on December 2, 2009 and Defendant's arraignment on federal charges on April 28, 2010, the delays were substantially justified and this factor largely favors the government.

The third factor encourages, but does not require, defendant to assert his right to a speedy trial. *Barker*, 407 U.S. at 531–32. Defendant learned of the federal charges shortly before his release from state custody in April 2010. He filed a motion to dismiss the indictment on speedy trial grounds approximately four months later. In the meantime, however, he asked the Court to delay his trial once, and asked for a second delay on the same day he filed his motion to dismiss.

Defendant appropriately asserted his right to a speedy trial, but given his own requests for delays, this factor is neutral.

The fourth factor directs the Court to consider whether defendant was prejudiced by the delay. The Court should consider whether the pretrial incarceration was oppressive, the goal of minimizing the anxiety and concern of the accused, and the possibility that the defendant will be impaired. *Barker*, 407 U.S. at 532. Here, Defendant has been in custody for two-and-a-half years, but the majority of that time was spent serving a two-year state sentence for committing a felony. Accordingly, the incarceration was not oppressive and it caused no more anxiety or concern than it would have in the absence of the federal charges. Moreover, most of the evidence in the case is documentary. As a result, the delay is unlikely to impair Defendant's ability to raise a defense. Accordingly, this factor also favors the government.

Ultimately, the delay between Defendant's arrest and the trial has been caused, primarily, by the dual nature of his prosecution on state and federal charges. Given the dual nature of his prosecution and additional delays Defendant has requested, the time that has passed since he was indicted is not unreasonable. Indeed, none of the *Barker* factors favor Defendant's request to dismiss the indictment. Although the five-month delay following imposition of the state sentence was, perhaps, longer than necessary, it does not justify dismissing the indictment.

## IV

Defendant also contends that the aliases listed in the indictment should be stricken because they are irrelevant. The government indicated at the hearing that it does not oppose the relief sought in Defendant's motion to strike aliases. Moreover, the Sixth Circuit "strongly disapprove[s] the practice of including aliases in indictments." *United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir.

1972) (per curiam). They should be included "[o]nly when proof of an alias is relevant to identifying the defendant." *Id.* at 59. Accordingly, Defendant's motion will be granted and the aliases stricken.

## V

Accordingly, it is **ORDERED** that Defendant's motion to suppress evidence seized from 1749 Wood Street on April 30, 2008 [Dkt. #15] is **DENIED**.

It is further **ORDERED** that Defendant's motions to suppress evidence seized from UPS mailbox 273 and storage units 313 and 543 [Dkt. # 12, 14, 16] are **DISMISSED WITHOUT PREJUDICE**. The government will not be permitted to introduce evidence obtained during those searches at trial.

It is further **ORDERED** that Defendant's motion to dismiss the indictment [Dkt. # 17] is **DENIED**.

It is further **ORDERED** that Defendant's motion to strike aliases [Dkt. # 19] is **GRANTED**. The aliases "Steven Ruben Ranke," "Steven Bruce Westphal," and "BK Williams" are **STRICKEN** from the indictment.

It is further **ORDERED** that clarifying the scope of the indictment before trial is essential to efficient management of the case. Accordingly, the government is **DIRECTED** to submit a supplemental brief no longer than ten pages on or before **November 12, 2010**, explaining whether the images underlying Count One of the indictment are computer generated, and if they are, whether mailing computer generate images can constitutionally be prohibited under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244–45 (2002). Defendant shall submit a response no longer than ten pages on or before **November 24, 2010**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 29, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 29, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS